LUCIUS DURANT v. LEIGH R. POWELL AND HENRY W. ANDERSON, RECEIVERS OF S. A. L. RAILWAY COMPANY.

(Filed 24 May, 1939.)

1. **Contracts § 4—Party accepting offer by rendering services may not do so with secret reservations as to compensation.**

   The evidence tended to show that plaintiff was employed upon a regular eight-hour shift, that thereafter, due to unfavorable business conditions, the employer required him to work eight hours out of twelve hours each day, the employee to get four hours off during each 12-hour period, and that this change was fully explained to the employee and that he continued to work and draw his pay for an 8-hour day. The employee instituted this action contending that he had worked a 12-hour day and was entitled to 4 hours time and a half for each day he worked. *Held:* A contract is the agreement of both parties and its legal consequences are not dependent upon the impressions and understandings of one of them alone, and plaintiff employee could not accept the offer of employment with full knowledge and later insist on his secret mental reservations as to compensation.

2. **Contracts § 8—**

   The courts must construe a contract as made by the parties and cannot grant relief merely because the contract is a hard one.

3. **Compromise and Settlement § 2: Estoppel § 6g—A person accepting checks with knowledge that they were tendered in full settlement is estopped from asserting the contrary.**

   Plaintiff employee instituted this action to recover for overtime services which he claimed he had performed in addition to his regular hours of

DURANT v. POWELL.

employment. The defendants, receivers of the employer, introduced in evidence checks drawn to the order of plaintiff and cashed by him, each stipulating that it was in full for the prior two weeks services, and plaintiff himself testified that he cashed and used the proceeds thereof with full knowledge that defendants claimed they constituted full payment, but that he accepted same with mental reservations. *Held:* The acceptance of the checks by plaintiff with full knowledge estops him from claiming that they were not in full payment for all services rendered as stipulated thereon, and an instruction to answer the issue of indebtedness nothing, if the jury should find these facts by the greater weight of the evidence, is not error.

APPEAL by plaintiff from *Bivens, J.,* and a jury, at September Term, 1938, of RICHMOND. No error.

This is an action brought by plaintiff against defendants to recover the sum of $1,508.04. The allegations of the complaint as to the foundation of the indebtedness, are as follows: "That for a period of two years, eight months and twenty-seven days previous to January 27, 1935, the defendants called upon and required of him (the plaintiff) that he work, and he did work, twelve hours each day continuously for said period, thereby performing during said period . . . of overtime work and he was entitled to receive pay for the same at the rate of 71c per hour. That the defendants paid the plaintiff for his regular time of eight hours per day during said period, but failed to pay the plaintiff for his overtime services. That the plaintiff instituted this action on July 14, 1936, and exclusive of his lost time, and within a period of three years previous to said date, he performed overtime service for the defendants consisting of 2,124 hours, and for which the defendants are indebted to him at the rate of 71c per hour, amounting to a total of $1,508.04, and by reason of the defendants' failure to pay plaintiff for his overtime services, the defendants have breached their contract and agreement with the plaintiff, and the plaintiff is entitled to recover of the defendants the sum of $1,508.04, the same representing his overtime services performed for the defendants at the request and upon the demand of the defendants, their overseers and foremen, within the period of three years next preceding the institution of this action." The demand for payment is for $1,508.04.

In answer the defendants say: "That the plaintiff was employed for a period of eight (8) hours service, said period under the terms and conditions of his employment, as prescribed by the agreement between Seaboard Air Line Railway Company and employees, relating to stationary engineers and firemen, which terms and conditions were communicated to the plaintiff and accepted by him, was to be spread over a period of twelve hours. These defendants are informed and believe and therefore allege that the said plaintiff observed the said terms of his

employment, having taken during the time herein involved his four hours of relief during the period of twelve hours, and that he did not work over eight hours over spread of twelve, and that these defendants neither contracted for nor had any knowledge of any other hours than specified in their agreement."

For a further defense, these defendants say: "That the plaintiff was employed for eight hours service, spread over period of twelve hours and under the terms and conditions of his employment was paid for all services rendered twice each month by checks of the defendants, each of which said checks, there being one for each fifteen days of employment for services rendered during said time, was accepted by the plaintiff, with full knowledge that the same were tendered in full payment for all sums that the defendants claimed were due the plaintiff, and each of said checks was accepted and the amount thereof received by the said plaintiff and applied to his own uses and purposes. . . . The defendants plead said payment and plead the checks hereinbefore enumerated as an estoppel against any recovery on the part of said plaintiff against these defendants whatsoever."

The evidence of plaintiff was to the effect that he was a faithful colored employee of the S. A. L. Railway Company and had worked for it nearly thirty years. He is now retired from the service on a pension. He worked as fireman of a stationary boiler at the round-house in Hamlet for over fifteen years. He was employed to work eight hours a day and was to receive for same $3.77, and for overtime of 4 hours a day 71c an hour for 2,124 hours, amounting to $1,508.04.

Plaintiff testified, in part: "That lasted until June 1, 1932. At that time Mr. Tallevast said 'Old nigger, it will be 12 hours after Monday, June 1, 1932.' After that time I was on duty at the boiler 12 hours every day and during that 12 hours no one but me looked after it. That status continued up until January 27, 1935. They never paid me for any overtime during that period. The agreement was that I was to get $3.77 for eight hours service each day. . . . Mr. Tallevast was the head man over the stationary boilers. It was my duty to perform my work as directed by Mr. Tallevast. He told me that after a certain time that I would have to work eight hours over a spread of twelve; yes, that is what is meant, that eight hours over a spread of twelve was that you were to work eight but spread it over twelve so as to get four hours off. That is what he told me I was to do. . . . Beginning the first of January, 1932, I got a check from the railroad which I endorsed and got the money on. I never noticed what was printed on the check. I did not look at it, I was looking at the amount that was on there. I only looked at my initials and the amount. No, I paid no

attention to what was printed on the check. I know that check was for the last fifteen days in December, 1931, when I endorsed it. I knew that the railroad claimed that was all that they were due me. . . . I got the money on the check and used it. In February, 1932, I got a check for the second half of the month of January. Q. You knew they contended that was all they owed you? Ans.: Yes. I took the check, got the money on it and used it. Q. Lucius, I hand you 24 checks purporting to be drawn by the receivers of the Seaboard Air Line Railway Company to your order. I wish you would look at them and tell me if you got these checks? Ans.: Yes, my name is on them. I must have drawn them. Q. When you got a check you knew the railroad sent you that check for what they contended they owed you for services for the preceding fifteen days, don't you know that is right? Ans.: It was right the way they had it. . . . Q. You knew that they were insisting that was all they owed you? Ans.: That was all they claimed. I had some mental reservations about that was not right. There was no need to tell them anything about it."

E. T. Huguelet, witness for plaintiff, testified, in part: "Yes, he was paid on a basis of eight hours within a spread of twelve, plus $3.77 per day for Sundays and holidays. I had no complaint about that not being correct. I have had no conversation with Lucius about his pay. If there was any dispute between Lucius Durant and the receivers of the Seaboard Air Line Railway Company, I do not know about it. There was no complaint or dispute made to me as timekeeper."

C. J. Tallevast, witness for defendant, testified, in part: "In 1932 I had a conversation with him in respect to his firing the stationary boiler at Hamlet. At that time business conditions were poor with the railroad and traffic was light, and as a result thereof, a change was made with reference to the firing of the stationary boiler. At that particular time Durant was taken off a standard eight-hour basis, that is, working a standard eight hours without time off, and placed on a period of working eight hours over a spread of twelve or within a spread of twelve hours. That means, eight hours actual work spread over a period of twelve hours. That rule applies to stationary boilers and firemen. It applied to other stationary firemen and oilers than Durant, and also to other employees. Durant was told that his hours would be changed effective a certain date. I don't recall the particular day. But he was told he would work eight hours over a spread of twelve."

H. Ballenberger, witness for defendant, testified, in part: "I am in the employ of the Seaboard Air Line Railway Company at Hamlet as master mechanic. Mr. Tallevast is general foreman of the Locomotive Department. I am his immediate superior. My territory is Virginia, North Carolina division, from Cary, South Carolina, to Richmond,

Virginia. Ten shops are under my supervision. I know about the rule of eight hours over a spread of twelve. We work that at practically every point. It is general throughout the shops and the general rule applies to stationary firemen at Hamlet. Q. Does that general rule apply to other stationary firemen at other shops? Ans.: Yes, that applies to stationary firemen and other laborers. I had no notice of any complaint on the part of Lucius Durant as to hours and rate of pay until this action was instituted. . . . Business was dull in 1932, '33 and '34, cut down to four or five days a week. It was over that time that Lucius was working eight hours over a spread of twelve.

The issue submitted to the jury and their answer thereto were as follows: "Are the defendants indebted to the plaintiff, and if so, in what amount? Ans.: 'Nothing.'"

The court below rendered judgment on the verdict. The plaintiff made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Douglass & Douglass, Jones & Jones, and R. L. McMillan for plaintiff.*
*Varser, McIntyre & Henry for defendants.*

CLARKSON, J. Did the trial judge commit reversible error? We think not. This is the plaintiff's only statement of the question involved. The cause of action instituted by plaintiff against defendants is bottomed on the following allegations in the complaint: "He performed overtime service for the defendants consisting of 2,124 hours, and for which the defendants are indebted to him at the rate of 71c per hour, amounting to a total of $1,508.04."

In answer to this the defendants say: "That the plaintiff was employed for a period of eight (8) hours service, said period under the terms and conditions of his employment, as prescribed by the agreement between Seaboard Air Line Railway Company and employees, relating to stationary engineers and firemen, which terms and conditions were communicated to the plaintiff and accepted by him, was to be spread over a period of twelve hours." It appears in evidence that the reason why the "8 hours over a spread of 12" was adopted was on account of the deflation. As stated by a witness for defendant, "Business was dull in 1932, '33 and '34, cut down to 4 or 5 days a week. It was over that time that Lucius was working 8 hours over a spread of 12."

From the evidence of plaintiff himself, he understood the new contract made between himself and defendant S. A. L. Railway Company. He testified: "That is what it meant, that 8 hours over a spread of 12 was that you were to work, but spread it over 12, so as to get four hours off.

DURANT *v.* POWELL.

That is what he told me I was to do." Under this agreement plaintiff continued to work and draw his pay—$3.77 a day. No murmur or complaint from him until this action was commenced. From the allegations of plaintiff's complaint, we see no reversible error in the court below refusing to allow one of plaintiff's witnesses to state whether certain rules and working regulations applied to the plaintiff during the period under consideration. Nor do we think what defendants' witnesses testified to in regard to the application of such rules reversible error. We think the rules as explained by defendants' witnesses were substantially the rules as contended for by plaintiff, and there was no substantial variance. In fact, plaintiff entered into the contract with defendants knowing nothing about the so-called rules and working regulations. This being the case, the matter was immaterial and could lend no light. *Henley v. Holt,* 214 N. C., 384 (387-8).

A "contract" is an agreement upon sufficient consideration, to do or not to do a particular thing, resulting from the concurrence of minds of two or more persons, and its legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it, but on what both agree. *Overall Co. v. Holmes,* 186 N. C., 428; *Belk's Department Store v. Ins. Co.,* 208 N. C., 267.

A court cannot grant relief from a contract merely because it is a hard one. *Forbes v. Mill Co.,* 195 N. C., 51.

"A contract is the product of two or more consenting minds making a commitment about the same thing, binding on the parties at law or in equity. It is true that where there has been no meeting of the minds on the essentials of the treaty, no contract results. *Lumber Co. v. Boushall,* 168 N. C., 501." *Cheek v. R. R.,* 214 N. C., 152 (156).

"An offer may invite an acceptance to be made by merely an affirmative answer, or by performing or refraining from performing a specified act, or may contain a choice of terms from which the offeree is given the power to make a selection in his acceptance." Restatement of Law-Contracts, Amer. Law Inst., Vol. 1, sec. 29. The court below charged correctly the meaning of a contract.

The plaintiff contended that "The trial judge committed error in charging the jury that acceptance of pay checks by the plaintiff estopped the plaintiff from asserting his claim for pay for overtime work." We cannot so hold.

The agreement from the evidence, made by defendants and accepted by plaintiff, was thoroughly understood by the plaintiff. He was *sui juris,* could read and write. He was receiving good wages—$3.77 a day. No doubt plaintiff, being a faithful employee of long standing defendants did not want him to lose his job and made the offer, which was accepted by plaintiff, that he could continue in the service on full-time

work "8 hours over a spread of 12." It is undisputed in the record that plaintiff admitted that he received the twenty-four checks in evidence from defendant. "Q. You know they contended that was all they owed you? Ans.: Yes, I took the checks, got the money and used it. . . . Q. You know that they were insisting that was all they owed you? Ans.: That was all they claimed. I had some mental reservation that that was not right. There was no need to tell them anything about it."

In *DeLoache v. DeLoache,* 189 N. C., 394 (398), it is said: "In *Moore v. Assurance Corp.,* 173 N. C., on page 538, *Walker, J.,* says: 'This Court has held in numerous cases that when on the face of the check is stated the purpose for which it is given, or the condition of the payment which it represents, the party to whom it is given or sent cannot accept and use it and afterwards repudiate the condition.' Citing *Kerr v. Sanders, supra* (122 N. C., 635); *Armstrong v. Lonon,* 149 N. C., 434; *Aydlett v. Brown,* 153 N. C., 336. In the latter case, the Court says: 'He will not be permitted to collect the check and repudiate the condition.' . . . When the plaintiff accepted the check with the statement written thereon that it was in full settlement and then cashed the check, he is bound thereby. *Ore Co. v. Powers,* 130 N. C., 152; *Petit v. Woodlief,* 115 N. C., 120; *Cline v. Rudisill,* 126 N. C., 525; *Wittkowsky v. Baruch,* 127 N. C., 315; *Armstrong v. Lonon, supra; Drewry v. Davis,* 151 N. C., 295; *Supply Co. v. Watt,* 181 N. C., 432; . . . *Long v. Rockingham,* 187 N. C., 199 (211)." . . . "Business transactions cannot be safely conducted upon secret reservations of mind that are totally inconsistent with the open acts." *Lawson v. Bank,* 203 N. C., 368 (372), 75 A. L. R., 907-922.

We see no error in the charge of the court below. It gave the contentions fairly to both sides, placed the burden of proof correctly, charged the law applicable to the facts and also charged the jury (to which exception and assignment of error was made by plaintiff which cannot be sustained) : "If you find from the evidence and by its greater weight, that the plaintiff accepted the checks of the defendants, which have been offered in evidence, containing the recitals in each check thereof, that it was in full for services rendered during the half month just previous to the date of each check, and that he knew that at the time he received said checks that the defendants were offering them in full payment for his services, and that the defendants contended then that the amounts of the said several checks were the correct amounts due the plaintiff, and that at the time he cashed said checks, he had a reservation in his mind, which he did not express to the defendants, that he would use the proceeds of said checks, and later make a claim for additional pay for his services, then the law does not permit such mental

reservations to invalidate the condition expressed in the face of the checks, and the plaintiff would not be entitled to recover herein, and if you so find, you will answer the issue 'Nothing.' That is to say, gentlemen of the jury, if the plaintiff at the time accepted those checks, and accepted them in full payment of the services that he had rendered to the company, knowing all the conditions, and he accepted them at that time, that would make a settlement in full; the law saying that was a contract entered into between the defendant and the plaintiff, and he would be bound by it."

In the judgment of the court below, we can find

No error.