CAP CARE GROUP, INC. AND PWPP PARTNERS v. C. WAYNE McDONALD, INDIVIDUALLY, AND C&M INVESTMENTS OF HIGH POINT, INC.

No. COA01-170

(Filed 16 April 2002)

**1. Partnerships; Contracts— breach of oral agreement to enter into partnership—directed verdict—judgment notwithstanding the verdict**

The trial court did not err by denying defendants' motions for directed verdict and judgment notwithstanding the verdict on the issue of breach of an oral agreement to enter into a partnership to purchase property because there is substantial evidence that plaintiffs and defendants entered into an agreement to form a partnership, including that: (1) an officer of defendant corporation testified she knew defendants had a deal with plaintiffs and that plaintiff corporations' president had agreed to fund half of the earnest money to get the property; (2) the individual defendant testified that his account would have been overdrawn had he not deposited plaintiffs' checks and that the $20,000 earnest

money was part of the purchase price of the property; (3) there was substantial evidence that the parties had reached an agreement to jointly purchase and develop the property; (4) defendants never informed plaintiffs that they were not acting as partners until after the purchase of the property; (5) the offer to form a partnership is not contested since defendants accepted the consideration of $10,000 from plaintiffs for the property and defendants precisely carried out the joint plan of the parties until after the purchase of the property; and (6) there was a meeting of the minds even though how the property would be managed was not clear since a failure to agree on some of the issues does not invalidate the underlying agreement.

## 2. Partnerships— jury instructions—time limits—validity of agreement to agree—evidence of partnership

The trial court did not err in an action for breach of an oral agreement to enter into a partnership to purchase property by failing to instruct the jury on time limits regarding acceptance, the validity of an agreement to agree, and what may be considered evidence of a partnership, because the substance of defendants' requested instructions was embodied in the instructions given.

## 3. Evidence— expert testimony—damages

The trial court did not abuse its discretion in an action for breach of an oral agreement to enter into a partnership to purchase property by admitting the testimony of plaintiffs' expert regarding plaintiffs' damages, because: (1) there is evidence that defendants knew of the expert's identity for over a month before trial and that defendants did not depose him; and (2) the individual defendant himself provided the basis of the expert's calculations.

## 4. Real Property— lis pendens—constructive trust

The trial court did not err in an action for breach of an oral agreement to enter into a partnership to purchase property by failing to cancel plaintiffs' lis pendens imposing a constructive trust on the pertinent property and failing to disburse to defendant corporation the bond plaintiffs posted, because: (1) plaintiffs showed that their money was used as part of the payment to purchase the property; and (2) plaintiffs' allegations for a trust were adequate.

CAP CARE GRP., INC. v. McDONALD

[149 N.C. App. 817 (2002)]

**5. Judgments— date interest accrues—breach of contract**

The trial court did not err in an action for breach of an oral agreement to enter into a partnership to purchase property by failing to amend the judgment to reflect interest beginning on the judgment date, because: (1) N.C.G.S. § 24-5(a) provides that in an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach; and (2) the individual defendant informed plaintiffs that he did not intend to act as a partner on 30 April 1997, which is the date the trial court properly relied on to establish the initial date on which interest began to accrue.

Appeal by defendants from judgments entered 6 May 1998, 31 December 1998, and 5 April 2000 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 19 February 2002.

*Hendrick Law Firm by T. Paul Hendrick & Matthew H. Bryant for plaintiffs-appellees.*

*Law Offices of J. Calvin Cunningham by R. Flint Crump & J. Calvin Cunningham for defendants-appellants.*

THOMAS, Judge.

Defendants, C. Wayne McDonald and C&M Investments of High Point, Inc., appeal from a judgment finding them in breach of an oral partnership contract to purchase real estate.

Ordered to pay plaintiffs, Cap Care Group, Inc. and PWPP Partners, $477,511.00 as a result of the breach, defendants argue five assignments of error. Among their contentions is that the parties had merely entered into an unenforceable agreement to form a partnership. For the reasons discussed herein, we find no error.

Cap Care and PWPP are engaged in the business of buying and developing commercial real estate and then either leasing or selling it. Ronnel S. Parker, Sr., is president of both entities. C&M is engaged in the same type of business as plaintiffs. McDonald owns and controls C&M.

Plaintiffs' factual allegations include the following: Cap Care made several attempts to buy a 27.6 acre commercial site in High Point, North Carolina, which also contained a large building. The

owner of the property had defaulted on a loan, so the holder of the deed of trust, NationsBank, was in charge of the sale. Plaintiffs' first two offers to purchase the property were rejected. The third, for $1,300,000, was accepted by NationsBank. Due to the results of an environmental study, however, plaintiffs cancelled the contract despite being still interested in eventually purchasing the property.

Dwain Skeen, a real estate agent who had earlier advised plaintiffs regarding the property, suggested that a joint venture with McDonald might be beneficial. Plaintiffs had become concerned NationsBank would view any more of their offers with skepticism.

Skeen, McDonald, Parker, and another officer of Cap Care, Daniel Greene, met at Cap Care's offices in November 1996. During that meeting, McDonald was informed of the history of plaintiffs' offers. He was also given copies of environmental and title reports and a re-roofing estimate. The parties discussed entering into a partnership to jointly purchase, renovate, and manage the property with McDonald agreeing it was a viable investment. In fact, McDonald noted that he could perform the renovation at a lower cost than Cap Care had initially estimated.

Cap Care and McDonald then allegedly agreed: (1) to be equal partners in the purchase and development of the property; (2) to be equally responsible for costs; and (3) that McDonald would offer $700,000 to the seller on behalf of the partnership. Prior to that time, McDonald had never made an offer on the property.

Following the meeting, McDonald made an initial offer of $700,000. It was rejected. NationsBank's broker contacted Skeen in January 1997 and offered to sell the property for $1,000,000. While the proposal was being considered, PWPP wrote two checks totaling $10,000 to McDonald as an earnest money deposit on the property. This was one-half of the required $20,000 earnest money deposit.

On or about 12 February 1997, McDonald signed the sales contract, which was executed on 14 February 1997. He deposited PWPP's checks in his account and applied them to the $20,000 earnest money.

McDonald, Greene and Skeen met later in February to discuss the details of the purchase and development of the property. Greene reduced the discussions to a letter, which included that McDonald and Cap Care would jointly own the property as partners, Cap Care

would work with Skeen to procure tenants, McDonald would be the general contractor for any environmental remediation, and Cap Care and McDonald would each finance 50% of the costs. McDonald never signed the letter.

Defendants closed on the property on 10 March 1997. McDonald borrowed $1,000,000 from Branch Banking and Trust Company to finance the sale. He did not inform Cap Care of the closing date, or that the deed was only in the name of C&M, McDonald's company.

Plaintiffs subsequently demanded that defendants contribute the property to the partnership. Defendants refused and sent a letter to plaintiffs' attorney stating that they did not wish to continue to work with plaintiffs.

A complaint was filed by plaintiffs on 9 December 1997, alleging that defendants: (1) formed a partnership to purchase property located in Guilford County; (2) misappropriated partnership assets; (3) breached an express partnership contract; (4) breached an implied partnership contract; (5) participated in unfair and deceptive trade practices; and (6) wrongfully converted the partnership's contract rights to purchase the property to their own uses and control. Plaintiffs requested a judicial dissolution, for the property to be held in a constructive trust, and damages.

At trial, defendants moved for a directed verdict at the close of plaintiffs' evidence and at the close of all the evidence. The motions were denied. The jury found that: (1) plaintiffs had sustained damages in the amount of $477,511 for breach of contract; (2) defendants owed plaintiffs $10,336 for the acquisition and use of plaintiffs' $10,000 to fund the purchase of the property; and (3) defendants were not liable to plaintiffs for punitive damages. The trial court ordered plaintiffs to recover from defendants $477,511 plus 8% interest, filing fees, service fees, plaintiffs' deposition expenses and plaintiffs' expert witness fees. Defendants appeal.

[1] By their first assignment of error, defendants argue the trial court should have granted their motions for directed verdict and judgment notwithstanding the verdict on the issue of breach of an agreement to enter into a partnership. We disagree.

A directed verdict is proper when there is no evidence of an essential element of plaintiff's claim. *McMurray v. Surety Federal Savings & Loan Assoc.*, 82 N.C. App. 729, 348 S.E.2d 162 (1986), *cert. denied*, 318 N.C. 695, 351 S.E.2d 748 (1987). Judgment

notwithstanding the verdict is properly granted if all the evidence supporting plaintiffs' claim, taken as true and considered in the light most favorable to plaintiffs, was not sufficient as a matter of law to support a verdict for the plaintiffs. *Hargett v. Gastonia Air Service*, 23 N.C. App. 636, 638, 209 S.E.2d 518, 519 (1974), cert. denied 286 N.C. 414, 211 S.E.2d 217 (1975). In the instant case, there is substantial evidence that plaintiffs and defendants entered into an agreement to form a partnership.

A partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." N.C. Gen. Stat. § 59-36 (1999). A partnership can be formed orally or implied by the parties' conduct. *Peed v. Peed*, 72 N.C. App. 549, 325 S.E.2d 275, *rev. denied*, 313 N.C. 604, 330 S.E.2d 612 (1985).

McDonald's wife, Wendy McDonald, who is also an officer of C&M, testified that she knew McDonald had a deal with plaintiffs and that Parker had agreed to fund half of the earnest money to get the property. McDonald himself testified that his account would have been overdrawn had he not deposited Parker's checks and that the $20,000 earnest money was part of the purchase price of the property. There was substantial evidence that the parties had reached an agreement to jointly purchase and develop the property. Further, defendants never informed plaintiffs that they were not acting as partners until after the purchase of the property.

An enforceable agreement requires an offer, acceptance and consideration. *Copy Products, Inc. v. Randolph*, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88 (1983).

Here, the offer to form a partnership is not contested. Defendants argue they never accepted the offer. However, defendants did accept the consideration of $10,000 from plaintiffs to pay for the property. They also precisely carried out the joint plan of the parties until *after* the purchase of the property. There was never any indication during that process that the parties were not operating in unison, as partners. The general law of partnership applies to a partnership formed for the purpose of dealing in land. *Leftwich v. Franks*, 198 N.C. 289, 151 S.E. 637 (1930). An acceptance by conduct is a valid acceptance. *Durant v. Powell*, 215 N.C. 628, 2 S.E.2d 884 (1939).

Defendants contend there was no meeting of the minds because how the property would be managed was not clear. However, it is well-established in North Carolina that a failure to agree on some

issues does not invalidate the underlying agreement. *See Pee Dee Oil Co. v. Quality Oil Co., Inc.*, 80 N.C. App. 219, 341 S.E.2d 113, *disc. rev. denied*, 317 N.C. 706, 347 S.E.2d 438 (1986); *Satterfield v. Pappas*, 67 N.C. App. 28, 312 S.E.2d 511, *disc. rev. denied*, 311 N.C. 403, 319 S.E.2d 274 (1984).

We therefore hold that there was a valid agreement among the parties to form a partnership to purchase the property and that defendants breached that agreement. The trial court did not err in refusing to grant defendants' motions for directed verdict and judgment notwithstanding the verdict.

**[2]** By their second assignment of error, defendants argue the trial court should have instructed the jury on: (a) time limits regarding acceptance; (b) the validity of an agreement to agree; and (c) what may be considered evidence of a partnership. We disagree.

When a party requests a jury instruction, the trial court is obligated to so instruct if the instruction is a correct statement of the law and the evidence supports it. *See State v. Rogers*, 121 N.C. App. 273, 281, 465 S.E.2d 77, 82 (1996), *cert. denied*, 347 N.C. 583, 502 S.E.2d 612 (1998). In the instant case, the trial court instructed the jury on (1) mutual assent; (2) sufficiency of consideration; (3) offer and acceptance; (4) manner of acceptance; (5) contract between parties; and (6) the standard of reasonableness in determining the meaning of writings, words, and conduct of the parties. These instructions were correct and there was ample specific evidence to show mutual assent through conduct, an offer and acceptance, and consideration. The substance of defendants' requested instructions, in fact, was embodied in those given. The trial court did not err.

**[3]** By their third assignment of error, defendants argue the trial court should not have admitted the testimony of plaintiffs' expert witness, Dwain Bryant, regarding plaintiffs' damages. We disagree.

The trial court has unbridled discretion in allowing expert testimony and will only be overturned for an abuse of discretion. *State v. Parks*, 96 N.C. App. 589, 386 S.E.2d 748 (1989). The test for abuse of discretion is whether a decision is manifestly unsupported by reason, or is so arbitrary that it could not have been the result of a reasoned decision. *Harrison v. Tobacco Transport, Inc.*, 139 N.C. App. 561, 533 S.E.2d 871, *rev. denied*, 353 N.C. 263, 546 S.E.2d 96 (2000).

In the instant case, there is evidence that defendants knew of Bryant's identity for over a month before trial and that defendants did

not depose him. Further, McDonald himself provided the basis of Bryant's calculations. Defendants failed to carry their burden to show an abuse of discretion. We reject this argument.

**[4]** By their fourth assignment of error, defendants argue the trial court should have cancelled plaintiffs' *lis pendens* against the property at issue and disbursed to C&M the bond plaintiffs posted. We disagree.

*Lis pendens* binds a purchaser or encumbrancer of property to the results of a lawsuit that may affect the title to the property. *Black's Law Dictionary* 932 (6th ed. 1990). The *lis pendens* notifies prospective purchasers and encumbrancers that any interest acquired by them is subject to a pending lawsuit. *Id. See also* N.C. Gen. Stat. § 1-116(a)(1) (1999).

In the instant case, plaintiffs filed *lis pendens* to impose a constructive trust on the property. *See Cutter v. Cutter Realty Co.*, 265 N.C. 664, 144 S.E.2d 882 (1965). This Court has held that *lis pendens* is appropriate where a plaintiff: (1) can trace his funds into the property; and (2) alleges either an express or implied trust. *Pegram v. Tomrich Corp.*, 4 N.C. App. 413, 166 S.E.2d 849 (1969). Here, plaintiffs showed that their money was used as part of the payment to purchase the property and their allegations for a trust were adequate. The trial court, therefore, did not err in maintaining notice of *lis pendens* on the property in question.

**[5]** By their final assignment of error, defendants argue the trial court should have amended the judgment to reflect interest beginning on the judgment date. We disagree.

Pre-judgment interest is awarded under N.C. Gen. Stat. § 24-5, which provides, in pertinent part, that "[i]n an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach." N.C. Gen. Stat. § 24-5(a) (2001). Once breach is established, plaintiffs are entitled to interest from the date of the breach as a matter of law. *Thomas M. McInnis & Assoc., Inc. v. Hall,* 318 N.C. 421, 431, 349 S.E.2d 552, 558 (1986).

In the instant case, McDonald informed plaintiffs that he did not intend to act as a partner on 30 April 1997. The trial court properly relied on this evidence for establishing the initial date on which interest began accruing. Again, the trial court did not err.

NO ERROR.

Judges GREENE and McGEE concur.