***********
The Full Commission has reviewed the prior Opinion and Awards based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission REVERSES in part and AFFIRMS in part the Opinion and Awards of Deputy Commissioner Phillips and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearings before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employer-employee relationship existed between plaintiff and Advance Transportation (hereafter defendant-employer).
3. On June 3, 2008, plaintiff was in the course of his employment as a truck driver for defendant-employer when he was involved in a motor vehicle accident arising out of that employment near Lenoir, North Carolina.
4. On June 3, 2008, defendant-employer regularly employed three or more employees.
5. Defendant-employer was incorporated in Tennessee. Defendant-employer was licensed to do business in North Carolina as of November 1, 1999 and operated in North Carolina until James L. North withdrew the certificate of authority effective April 21, 2009. The sole shareholder and president of defendant-employer was James L. North. Mr. North knowingly and intentionally failed to pay his premiums for workers' compensation insurance coverage for his North Carolina business.
6. Plaintiff's average weekly wage was $813.12, yielding a compensation rate of $542.08.
 ***********
The following documentary evidence was received at the hearing before the Deputy Commissioner:
 EXHIBITS a. Stipulated Exhibit #1: Medical records
 b. Stipulated Exhibit #2: IC forms
 c. Stipulated Exhibit #3: Discovery documents
 d. Stipulated Exhibit #4: Medical bills
 e. Stipulated Exhibit #5: Corporate filings
 f. Stipulated Exhibit #6: Affidavit from Brian Ormand
 g. Stipulated Exhibit #7: Supplemental documents indicating service on James L. North
 h. Stipulated Exhibit #8: Affidavit of Mr. North
 i. Stipulated Exhibit #9: Attorney Bernanke's letter to Dr. Heafner and Dr. Heafner's response dated May 20, 2010
 j. Plaintiff's Exhibit #1: Plaintiff's W-2 for 2007
 k. State's Exhibit #1: Employment Security Commission records for defendant-employer
 l. State's Exhibit #2: NCIC coverage database
 m. Deposition of Todd McMullen.
 *********** ISSUES PRESENTED
1. Did defendants Southern Insurance Company (hereafter Southern Insurance) and FirstComp Underwriters Group, Inc. (hereafter First Comp) effectively cancel workers' compensation coverage for defendant-employer;
2. Did defendants First Comp and Southern Insurance effectively refuse to renew workers' compensation coverage for defendant-employer;
3. Whether defendant-employer is liable for workers' compensation benefits owed to plaintiff based upon a cancellation or non-renewal of the workers' compensation policy;
4. Are defendants subject to civil or criminal penalties pursuant to N.C. Gen. Stat. § 97-94 for failure to maintain workers' compensation insurance and, if so, in what amount;
5. To what benefits is plaintiff entitled; and
6. Whether plaintiff remains disabled as defined by the North Carolina Workers' Compensation Act.
Following the arguments before the Full Commission, plaintiff objected to a portion of the Assistant Attorney General's comments during oral arguments. Any arguments in the nature of testimony from the Assistant Attorney General have not been considered by the Full Commission in reaching this decision.
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Southern Insurance and defendant-employer entered into a contract for workers' compensation insurance coverage. In return for payment of the premium by defendant-employer, Southern Insurance contracted to provide "Workers Compensation and Employer's Liability Insurance Policy" to defendant-employer. The original policy period was March 18, 2007 through March 18, 2008, a one year period. The terms of the policy show that both parties intended for this contract and/or policy to cover the designated one year period, March 18, 2007 through March 18, 2008. The policy was administered by FirstComp.
2. On August 31, 2007 FirstComp attempted to cancel the policy prior to the original contract expiration date of March 18, 2008 due to nonpayment of premium payments by defendant-employer. The cancellation was to be effective September 24, 2007. FirstComp allegedly mailed a notice of early cancellation to defendant-employer. FirstComp's mail person documented this task by creating a form that stated the cancellation documents were mailed out. According to FirstComp's internal documents, this cancellation packet was picked up by a mail carrier from FirstComp on August 31, 2007.
3. A telephonic deposition was completed with FirstComp employee, Todd McMullen, who was a quality assurance supervisor. At the time of alleged cancellation of the workers' compensation policy, Mr. McMullen was a salesperson and had never written any North Carolina coverage. Mr. McMullen had no direct knowledge regarding policies and procedures employed by FirstComp to cancel workers' compensation policies in North Carolina. Mr. McMullen provided a copy of the original policy issued by Southern Insurance Company to the insured, defendant-employer, which was administered by FirstComp Underwriters Group with a policy period of March 18, 2007 to September 24, 2007.
4. Mr. McMullen testified that he believed the State of North Carolina required at least 20 days notice and that FirstComp allows 2 extra days for a total of 22 days notice to the insured for cancelation. Mr. McMullen testified that FirstComp batches all of a particular day's cancellation forms, merges the packet together with an insured mailing form so that it gets mailed directly to the insured, certified, and then FirstComp faxes a copy of everything to the insurance agent. No evidence was produced to show that the cancellation notice was sent to defendant-employer by certified or registered mail, return receipt requested. No evidence was produced to indicate that defendant-employer received the notice or that the certified mailing process had been properly completed.
5. The evidence indicates only that FirstComp mailed the notice of cancellation. The evidence presented does not provide adequate proof that FirstComp properly notified defendant-employer of the early cancellation of its workers' compensation insurance, through registered or certified mail, return receipt requested. N.C. Gen. Stat. § 58-36-105 sets forth the statutory requirements for cancellation of workers' compensation policies for non-payment of premium and this cancellation requires no less than 15 days notice to the insured by registered or certified mail, return receipt requested.
6. The Full Commission finds that FirstComp's notice of cancellation was ineffective as a matter of law because cancellation was not undertaken by means of registered or certified mail, return receipt requested, pursuant to N.C. Gen. Stat. § 58-36-105(b). Therefore, FirstComp continued to provide coverage to defendant-employer through the end of the stated policy term, March 18, 2008.
7. A notice of cancellation and a notice of nonrenewal are different documents with different purposes and different statutory requirements. The notice to which Mr. McMullen testified and upon which defendants rely was a notice of cancellation. The policy at issue does not contain any terms or language indicating policy renewal is automatic at the end of the initial policy term. There was no evidence presented that FirstComp refused to renew defendant-employer's policy or that defendant-employer made any attempt to renew this policy, which would then mandate statutory compliance for non-renewal pursuant to N.C. Gen. Stat. § 58-36-110. Defendant-employer's policy ended, as stated by the terms of the contract, at the end of the policy period, March 18, 2008. The policy at issue did not automatically renew and defendant-employer impliedly agreed to non-renewal through non-payment of premiums. Therefore, a 45-day notice of non-renewal was not required to be sent to defendant-employer pursuant to N.C. Gen. Stat. § 58-36-110.
8. The Employment Security Commission records, marked as State's Exhibit Number 1, show that defendant-employer regularly employed three or more persons from the first quarter of 2008 through the first quarter of 2009 and was subject to the North Carolina Workers' Compensation Act during that period. As of March 19, 2008, defendant-employer had no workers' compensation insurance coverage for its employees. The North Carolina Industrial Commission coverage database printout, marked as State's Exhibit Number 2, shows that defendant-employer failed to maintain workers' compensation coverage for its employees from March 19, 2008 through March 31, 2009.
9. On June 3, 2008, plaintiff was a tractor-trailer truck driver for defendant-employer. In the course and scope of his employment with defendant-employer, plaintiff was driving his truck near Lenoir, North Carolina, when he saw another vehicle stopped in the roadway ahead of him. Because he did not have time to stop on the roadway, plaintiff steered off the roadway to his right to avoid colliding with the vehicle ahead. Plaintiff traveled down an embankment to a wooded area where his cab struck a large tree. Plaintiff felt immediate pain to his low back.
10. Plaintiff reported the accident by telephone to Jamie Chapman, his dispatcher at defendant-employer. Plaintiff rode back to Charlotte with the wrecker and reported the accident to the office manager, Pam Longdon, in person. Ms. Longdon told plaintiff that defendant-employer had no workers' compensation insurance and would pay plaintiff directly. Ms. Longdon told plaintiff that defendant-employer would take care of his medical bills and directed plaintiff to seek treatment at Concentra. For approximately eight weeks plaintiff was paid $370.50, which represented 60% of what plaintiff earned in a 40-hour work week. The checks were signed by Jack North on behalf of defendant-employer. Mr. North stopped paying plaintiff after the doctor released plaintiff to light duty work.
11. On June 3, 2008, plaintiff sought treatment at Concentra. A drug test and x-ray were given and medication prescribed. The treating physician read the x-rays which revealed a series of bone spurs. Plaintiff was written out of work at that time.
12. Plaintiff continued to experience severe back pain. On June 7, 2008, plaintiff was transported by ambulance to Gaston Memorial Hospital Emergency Room. The attending physician noted that plaintiff reported continuing back pain with a report of negative lumbar x-ray. Plaintiff was discharged with instructions to continue pain medication. On June 9, 2008, the Concentra physician referred plaintiff for an MRI.
13. On June 15, 2008, the MRI of plaintiff's low back revealed an L2 burst fracture with retropulsion and fragments adjacent to the spinal cord. Dr. Michael Heafner of Carolina Neurosurgery and Spine Associates was consulted and plaintiff was scheduled for surgery. On June 17, 2008, Dr. Heafner performed an L1-L3 posterior lumbar instrumented fusion with pedicle screw fixation.
14. On November 11, 2008 Dr. Heafner released plaintiff to light duty work with no lifting greater than 20 pounds. On May 28, 2009, Dr. Heafner released plaintiff to return to activities as tolerated. Plaintiff's counsel sought additional clarification of Dr. Heafner's restrictions through a letter. On May 20, 2010, Dr. Heafner responded and indicated he had advised plaintiff in May 2009 that he should not engage in long distance driving "unless he improves." Dr. Heafner also stated that prolonged sitting may aggravate plaintiff's low back pain, and he assigned plaintiff a 20% permanent partial disability to the back.
15. Plaintiff was 65 years old at the time of the hearing before the Deputy Commissioner. Plaintiff completed the eighth grade and obtained his GED from Gaston College between 1982 and 1983. Plaintiff attended truck driving school in 1969 to 1970 and has been a long distance truck driver essentially his entire adult life. Plaintiff applied for and has been approved for Social Security Disability benefits.
16. The greater weight of the credible medical evidence of record shows that, as a result of plaintiff's back injury, along with his physical and vocational limitations, plaintiff has been totally disabled and unable to earn any wages in any employment since June 3, 2008 and continuing.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 58-36-105 provides that cancellation, including for non-payment of premium, of an insurance policy is not effective unless written notice of cancellation has been given by registered or certified mail, return receipt requested, to the insured not less than 15 days before the proposed effective date of cancellation. FirstComp's cancellation of defendant-employer's workers' compensation policy on September 24, 2007, was ineffective as a matter of law because cancellation was not undertaken by means of registered or certified mail, return receipt requested, pursuant to N.C. Gen. Stat. § 58-36-105(b).
2. The caselaw in North Carolina states that the elements of an enforceable contract are offer, acceptance, and consideration.Cap Care Grp., Inc. v. McDonald,149 N.C. App. 817, 822, 561 S.E.2d 578, 582 (2002). Further, it is well-settled principle in North Carolina contract law that "a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." Northington v.Michelotti, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995).
3. In this case the terms of the insurance policy indicate that Southern Insurance agreed to provide defendant-employer workers' compensation coverage for a one-year period in exchange for payment of an annual premium. Defendant-employer's workers' compensation policy expired pursuant to the terms of the contract on March 18, 2008. Accordingly, defendant-employer did not possess workers' compensation insurance coverage at the time of plaintiff's injury by accident on June 3, 2008.
4. On June 3, 2008, defendant-employer regularly employed three or more employees and was subject to the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(1). Therefore, defendant-employer was required by the Act to carry workers' compensation insurance to insure its liability under the Act. N.C. Gen. Stat. § 97-93. Defendant-employer had no workers' compensation insurance coverage for its employees from March 19, 2008 through March 31, 2009, in violation of the Act. N.C. Gen. Stat. § 97-93.
5. On June 3, 2008, plaintiff sustained a compensable injury to his low back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
6. Plaintiff has the burden of proving disability as a result of a compensable injury by accident. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277, disc. reviewdenied, 353 N.C. 729, 550 S.E.2d 782 (2001). In order to meet this burden of proof, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations.Demery v. Perdue Farms., Inc., supra. 7. In the instant case, as a result of plaintiff's injury by accident, plaintiff was restricted from driving long distances, which prohibited him from returning to his truck driving job. Although plaintiff was capable of some work, it would be futile for him to seek employment because of his advanced age, limited education, and work experience almost exclusively driving trucks. Therefore, plaintiff met his initial burden to show that after June 3, 2008, he has been disabled and unable to earn wages in his former employment with defendant-employer or in other employment. Russell v. LowesProduct Distribution, supra.
8. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental and vocational limitations. Demery v. Perdue Farms, Inc., supra.
9. As a result of his compensable injury, plaintiff is temporarily totally disabled from employment and is entitled to have defendant-employer pay temporary total disability compensation at the rate of $542.08 per week from June 3, 2008 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
10. Plaintiff is entitled to have defendant-employer pay medical compensation for treatment of plaintiff's low back, including payment to Concentra, Gaston Memorial Hospital, Carolinas Medical Center, Dr. Michael Heafner, and other medical providers. N.C. Gen. Stat. §§ 97-2(19), 97-25.
11. Any employer required to secure payment of compensation who refuses and neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases pursuant to N.C. Gen. Stat. § 97-94(b).
 ***********
Based upon the foregoing, the Full Commission enters the following:
 ORDER
1. Subject to the attorney's fee approved below, defendant-employer shall pay plaintiff temporary total disability compensation at the rate of $542.08 per week, from June 3, 2008 and continuing until further Order of the Industrial Commission. Such amount as has accrued shall be paid in a lump sum.
2. Defendant-employer shall pay medical compensation for diagnostics, evaluation and treatment rendered for plaintiff's compensable lumbar spine injury.
3. Defendant-employer shall pay a reasonable attorney's fee as follows: 25% of the lump sum compensation awarded plaintiff in Paragraph 1 above shall be paid directly to plaintiff's attorney; thereafter, every fourth check shall be paid to plaintiff's counsel.
4. Defendant-employer is ordered to pay the State of North Carolina penalties in the sum of $18,850.00, which represents $50.00 per day (377 days) from March 19, 2008 to March 31, 2009 that defendant-employer failed to secure workers' compensation coverage in accordance with the North Carolina Workers' Compensation Act.
5. Defendant-employer shall pay the costs due this Commission.
6. Southern Insurance and CompFirst are hereby DISMISSED as party defendants in this claim.
This ___ day of March, 2011.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ LINDA CHEATHAM COMMISSIONER