Barnes v. Perry, 2018 NCBC 77.

STATE OF NORTH CAROLINA

CRAVEN COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 177

RONALD HOWARD BARNES,

Plaintiff,

v.

ELY J. PERRY, III; PERRY
BROTHERS PROPERTIES, LLC;
PERRY WIVES, LLC; PERRY
GRANDCHILDREN, LLC; DOWN
EAST HOLDINGS, LLC; and
PERRY'S, INC.,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO STRIKE
AND MOTION TO DISMISS**

1.    THIS MATTER is before the Court on Defendants' motion to strike (the "Motion to Strike") and motion to dismiss (the "Motion to Dismiss") filed on April 16, 2018 as a single motion.  (The Motion to Strike and Motion to Dismiss are collectively referred to herein as the "Motions.")  For the reasons set forth below, the Court hereby **DENIES** the Motion to Strike and **GRANTS in part** and **DENIES in part** the Motion to Dismiss.

> *Mast, Mast, Johnson, Wells & Trimyer, P.A., by George B. Mast and Clint A. Mast, for Plaintiff.*

> *White & Allen, P.A., by John P. Marshall & Matthew S. Sullivan, for Defendants.*

Robinson, Judge.

# I.    FACTUAL BACKGROUND

2.    The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") but only recites those factual allegations of the Complaint that are relevant and necessary to the Court's determination of the Motion to Dismiss.

3.    Plaintiff Ronald Howard Barnes ("Plaintiff") and Defendant Ely J. Perry, III ("Perry") are North Carolina residents who allegedly agreed to form a partnership to develop commercial properties for lease or sale.  (Compl. ¶¶ 1–2, 24, 28, 34, ECF No. 4.)

4.    Defendants Perry Brothers Properties, LLC ("Perry Brothers"), Perry Wives, LLC, Perry Grandchildren, LLC, and Down East Holdings, LLC ("Down East") (collectively, the "Perry Entities") are North Carolina limited liability companies with their principal offices at the same address in Lenoir County.  (Compl. ¶¶ 3, 7, 11, 14.) Perry is both the registered agent for and a member and manager of each of the Perry Entities.  (Compl. ¶¶ 4–6, 8–10, 12–13, 15–17, 23.)

5.    Defendant Perry's, Inc. is a North Carolina corporation that shares an address for its principal office with the Perry Entities.  (Compl. ¶ 18.)  Perry is the registered agent and secretary of Perry's, Inc.  (Compl. ¶¶ 20, 22.)

6.    Beginning in approximately 2009 and ending in 2016, Plaintiff and Perry operated as a partnership developing commercial properties to be sold or leased. (Compl. ¶¶ 24, 28, 60, 66, 90, 146.)  Plaintiff and Perry initially agreed to contribute equal capital to the partnership, but when Plaintiff was unable to do so, Plaintiff was

permitted to instead contribute his "expertise, contacts, services, and expenses." (Compl. ¶¶ 25–27.) Plaintiff and Perry agreed that profits and losses would be shared equally by the partners. (Compl. ¶ 27.)

7. Beginning in 2009, Plaintiff located suitable properties to be purchased for the partnership. (Compl. ¶¶ 28, 54.) Once the properties were under contract, Perry usually advanced Plaintiff a portion of the expected profits. (Compl. ¶¶ 34, 37.) Plaintiff and Perry understood that the advances were not intended to represent Plaintiff's entire share of the partnership profits but that once a property began generating profits, Plaintiff was entitled to half of the profits less the amount previously advanced. (Compl. ¶¶ 37–38, 40.) Were the partnership to experience a loss, Plaintiff and Perry would share those losses equally. (Compl. ¶ 34.)

8. Plaintiff and Perry acquired and developed eight separate properties. (Compl. ¶¶ 54–56, 59, 70–73, 83–85, 88, 96–99, 108–10, 120–24, 129–33, 154, 157.) Although the properties were acquired for the benefit of the partnership, all of the properties were titled to one of the Perry Entities. (Compl. ¶¶ 29, 67, 82, 95, 107, 110, 128, 130, 150, 166, Exs. B–G, I–J, L.)

9. Once a partnership property was acquired, Plaintiff developed the property, located and secured tenants, negotiated and entered into contracts and leases, and addressed any issues that arose that affected the profitability of the partnership's investment. (Compl. ¶ 28.) Perry provided the capital necessary for Plaintiff to fulfill his part of the partnership agreement and encouraged Plaintiff to provide services to the partnership. (Compl. ¶¶ 28, 47.)

10. During the course of the partnership, Plaintiff and Perry referred to each other as partners in their own dealings and held each other out to third parties as partners. (Compl. ¶¶ 42–46.) Third parties with whom Plaintiff dealt also understood Plaintiff and Perry to be partners and treated Plaintiff as "the face of the partnership," coming to him with any issues concerning the properties. (Compl. ¶¶ 47, 49.)

11. On at least two occasions, Plaintiff, for purposes of expediency, had his separate business, on behalf of the partnership, enter into a lease or a development contract involving the partnership properties. (Compl. ¶¶ 123, 158.) Notwithstanding the fact that the properties were held by the Perry Entities and Plaintiff's separate business entered into contracts on behalf of the partnership, the properties and their profits were partnership assets. (Compl. ¶¶ 29, 31, 123, 130, 158.) At the same time, the partnership agreed to provide Down East with a portion of the profits generated by a partnership property in Fayetteville and to provide a Perry Entity with a portion of the profits generated by a partnership property in Raleigh. (Compl. ¶¶ 118, 159.)

12. Plaintiff alleges that, with limited exceptions, when a partnership property generated income, Perry or one of the Perry Entities improperly retained Plaintiff's share of partnership profits. (Compl. ¶¶ 39, 66, 80, 93, 104–05, 114–15, 127, 147–48.) For example, when the partnership allowed a lessee to buy out its lease of a partnership property that was held by Down East, Plaintiff was not paid his share of the $150,000 buy-out price. (Compl. ¶¶ 113–15.) Additionally, Perry sold a

partnership property held by Perry Brothers for $1,520,000 without informing Plaintiff of the sale and then refused to pay Plaintiff his share of the sale proceeds when Plaintiff discovered the sale and demanded to be paid his share. (Compl. ¶¶ 66, 68.) The only occasion on which Plaintiff was alleged to have received partnership profits occurred after a partnership property in Fayetteville that was titled to Down East was sold on February 18, 2015 and Plaintiff received a portion of the sale proceeds. (Compl. ¶¶ 117–18, Ex. H.)

13. While the Complaint generally alleges that Plaintiff and Perry agreed that profits were to be split 50-50, after Plaintiff located a suitable property in Raleigh and contracted with a tenant through his separate business, Plaintiff alleges that the partnership agreed that Plaintiff and Perry would each be entitled to 40% of the profits and a Perry Entity would receive the final 20%. (Compl. ¶¶ 154–59.) Perry, who controlled all of the financial information about the Raleigh property, offered to purchase Plaintiff's share but refused to provide Plaintiff with financial information about the profitability of the property despite repeated demands. (Compl. ¶¶ 161–62, 164.) Plaintiff ultimately sold his share to Perry for the price offered by Perry without receiving the requested financial information. (Compl. ¶ 165.)

14. Throughout the course of the partnership, Plaintiff relied on Perry's representations that they were partners and believed that Perry was looking after his interest in the partnership. (Compl. ¶ 51.) However, in September 2016, Perry informed Plaintiff that Plaintiff would not receive any additional profits from the partnership. (Compl. ¶ 53.)

## II. PROCEDURAL HISTORY

15. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

16. Plaintiff initiated this action on February 13, 2018 by filing his Complaint. (ECF No. 4.) Plaintiff asserts claims against Perry for breach of partnership agreement, breach of fiduciary duty, and constructive fraud, and alternative claims for fraud, negligence, negligent misrepresentation, conversion, unfair and deceptive trade practices ("UDTP"), and unjust enrichment.[1] (Compl. 13–19.) Plaintiff also requests that the Court impose a constructive trust on the Perry Entities. (Compl. 20.)

17. The action was designated as a mandatory complex business case by order of Chief Justice Mark Martin of the Supreme Court of North Carolina dated February 22, 2018, (ECF No. 3), and was assigned to the undersigned by order of then-Chief Business Court Judge James L. Gale dated February 23, 2018, (ECF No. 2).

18. On April 16, 2018, Defendants filed the Motions seeking dismissal of Plaintiff's Complaint pursuant to Rules 12(b)(6) and 12(f). (ECF No. 14.) The Motions have been fully briefed, and the Court held a hearing on the Motions on July 19, 2018 at which all parties were represented by counsel.

---

[1] Plaintiff represented in his brief in opposition to the Motions that Plaintiff inadvertently placed the "in the alternative" label in the Complaint after the fraud claim, but that Plaintiff intended to plead the fraud claim and all claims thereafter in the alternative to the partnership claims. (Br. Opp'n Defs.' Mot. Dismiss Rule 12(b)(6) & Rule 12(f), at 3, ECF No. 19 ["Pl.'s Br. Opp'n"].) Notwithstanding Plaintiff's assertion in his brief, it is clear that the conversion claim is alleged as a partnership claim and will be treated as such by the Court.

19. The Motions are now ripe for resolution.

### III. LEGAL STANDARD

#### A. Motion to Strike

20. Rule 12(f) permits the Court to strike from a pleading "any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. Gen. Stat. § 1A-1, Rule 12(f). "The purpose of Rule 12(f) is to avoid expenditure of time and resources before trial by removing spurious issues . . . ." *Estrada v. Jaques*, 70 N.C. App. 627, 642, 321 S.E.2d 240, 250 (1984). A pleading may be stricken, in whole or in part, under Rule 12(f) if it fails to comport with the North Carolina Rules of Civil Procedure. *See Barnes v. Erie Ins. Exch.*, 156 N.C. App. 270, 280–81, 576 S.E.2d 681, 687–88 (2003) (holding that a court properly struck a third-party complaint for failing to comply with Rule 15).

21. "Unless an allegation in a complaint has no possible bearing upon the litigation, matters alleged in the complaint should not be stricken." *Womack Newspapers, Inc. v. Town of Kitty Hawk ex rel. Kitty Hawk Town Council*, 181 N.C. App. 1, 15, 639 S.E.2d 96, 105 (2007). "If there is any question as to whether an issue may arise, the motion should be denied." *Id.* "Rule 12(f) motions are addressed to the sound discretion of the trial court . . . ." *Reese v. Brooklyn Vill., LLC*, 209 N.C. App. 636, 653, 707 S.E.2d 249, 260 (2011) (quotation marks omitted).

#### B. Motion to Dismiss

22. In ruling on Defendants' 12(b)(6) Motion, the Court reviews the allegations of the Complaint in the light most favorable to Plaintiff. The Court's inquiry is

"whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

23.    Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

24.    The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). A "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862. The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## IV. MOTION TO STRIKE

25. The Motion to Strike requests that the Court dismiss Plaintiff's Complaint in its entirety pursuant to Rule 12(f) because the Complaint violates Rules 8(a), 8(e), and 10(c). (Mot. Dismiss Rule 12(b)(6) & Rule 12(f), at ¶ 9, ECF No. 14 ["Mot. Dismiss"].)

26. Defendants argue that Plaintiff's Complaint is a "shotgun complaint" that should be dismissed under the reasoning adopted by the Court of Appeals for the Eleventh Circuit because each separate claim incorporates by reference all preceding allegations of the prior claims. (Br. Supp. Mot. Dismiss & Mot. Strike 10, ECF No. 15 ["Defs.' Br. Supp."].) Defendants contend that such a pleading "cough[s] up an unsightly hairball of factual and legal allegations" that requires "the Defendants and the Court to pick through the mess and determine if Plaintiffs may have pleaded a viable claim[.]" (Defs.' Br. Supp. 11 (quoting *Gurman v. Metro Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011)).)

27. The Eleventh Circuit has defined a "shotgun pleading" as a pleading that asserts "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The Eleventh Circuit disfavors shotgun pleadings because they "fail . . . to give [a] defendant[] adequate notice of the claims against [him] and the grounds upon which each claim rests." *Id.* at 1323.

28.     Notwithstanding its position on shotgun pleadings, the Eleventh Circuit has found that district courts may abuse their discretion by dismissing shotgun pleadings when the claims and their factual allegations are "informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Id.* at 1326.

29.     The Court is not obliged to accept the logic of the Eleventh Circuit. "North Carolina is a notice pleading jurisdiction, and as a general rule, there is no particular formulation that must be included in a complaint or filing in order to invoke jurisdiction or provide notice of the subject of the suit to the opposing party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). Under Rule 8, a pleading need only contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions and occurrences, intended to be proved . . . ." N.C. Gen. Stat. § 1A-1, Rule 8(a)(1). Rule 8(a)(1) "prescribes the minimum information that a pleading *must* contain; it does not require that a complaint contain *only* a 'short and plain statement.'" *Holley v. Burroughs Wellcome Co.*, 74 N.C. App. 736, 748, 330 S.E.2d 228, 236 (1985).

30.     Rule 8(e)(2) provides that a party is permitted to "state as many separate claims or defenses as he has *regardless of consistency* and whether based on legal or on equitable grounds or on both." N.C. Gen. Stat. § 1A-1, Rule 8(e)(2) (emphasis added). Our rules further permits a pleading to demand "relief in the alternative or of several different types," N.C. Gen. Stat. § 1A-1, Rule 8(a)(2), and allows a party to

"set forth two or more statements of a claim or defense alternatively or hypothetically," N.C. Gen. Stat. § 1A-1, Rule 8(e)(2). In addition, our rules expressly allow "[s]tatements in a pleading [to] be adopted by reference in a different part of the same pleading or in another pleading or in any motion in the action." N.C. Gen. Stat. § 1A-1, Rule 10(c).

31. Defendants contend that, by incorporating all of the preceding allegations for each count for relief in the Complaint, Plaintiff has, for example, within his fraud claim simultaneously alleged that a partnership exists and that Perry fraudulently misrepresented the existence of a partnership. (Defs.' Br. Supp. 11.) Despite the inherent inconsistency in pleading the existence and non-existence of a partnership within the same Complaint, our Rules permit alternative and inconsistent claims within the same Complaint. Further, it has been a longstanding tradition of pleading in this State for plaintiffs to incorporate by reference prior allegations in succeeding causes of action.

32. Therefore, the Court declines to adopt the standard used by the Eleventh Circuit and concludes that Plaintiff's Complaint does not violate our procedural rules and is sufficient to provide Defendants with notice of the transactions and occurrences giving rise to the claims asserted against them.

## V. MOTION TO DISMISS

33. In support of their Motion to Dismiss, Defendants simultaneously argue that (1) all of Plaintiff's claims presuppose the existence of a partnership, which has not been adequately alleged, and (2) several of Plaintiff's claims are necessarily

defeated by allegations that a partnership existed. (Defs.' Br. Supp. 3, 6–9; Reply Br. Supp. Mot. Dismiss & Mot. Strike 3–5, ECF No. 23 ["Defs.' Reply Br."].) Because of the inconsistency in Defendants' arguments leveled against Plaintiff's alternative claims for relief, the Court will separately address Plaintiff's claims which require the existence of a partnership and those claims that Defendants contend would be precluded by the existence of a partnership.

### A. Partnership Claims

34. Although Defendants argue that all of Plaintiff's claims depend on the existence of a partnership between Plaintiff and Perry, the Court concludes, for purposes of the Motion, that only Plaintiff's claims against Perry for breach of the partnership agreement, breach of fiduciary duty, constructive fraud, and conversion[2] hinge on whether the Complaint adequately alleges the existence of a partnership. (*See* Defs.' Br. Supp. 3.)

35. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." N.C. Gen. Stat. § 59–36(a).

> A more detailed description is that [a partnership] is a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business.

---

[2] Although a conversion claim can exist in the absence of a partnership, the parties confine their arguments regarding the conversion claim to the alleged conversion of partnership profits or properties. (Defs.' Br. Supp. 8; Pl.'s Br. Opp'n 12–13; Defs.' Reply Br. 4.) Accordingly, the Court limits its discussion of the conversion claim to the partnership context.

*Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 437–38, 727 S.E.2d 291, 299 (2012) (quotation marks omitted). An enforceable partnership agreement need not be in writing. *Cap Care Grp., Inc. v. McDonald*, 149 N.C. App. 817, 822, 561 S.E.2d 578, 581 (2002).

36. "[I]n determining whether a partnership exists, . . . [t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business" unless such profits were received as payment of a debt, wages, annuity, interest on a loan, or consideration for the sale of a business's goodwill or other property. N.C. Gen. Stat. § 59-37(4). Our Court of Appeals has previously determined that "an agreement between two parties as to type of business, share in profits, and financing, when coupled with corroborating evidence that each party undertook measures to perform, constituted a sufficient basis for a jury to determine that a valid partnership agreement existed." *Surratt v. Brown*, 2015 NCBC LEXIS 75, at *12–13 (N.C. Super. Ct. July 27, 2015) (citing *Grub, Inc. v. Sammy's Seafood House & Oyster Bar, LLC*, No. COA14-861, 2015 N.C. App. LEXIS 330, *16–18 (Apr. 21, 2015)).

37. Even in the absence of an express agreement, "[a] finding that a partnership exists may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such." *Miller v. Rose*, 138 N.C. App. 582, 586, 532 S.E.2d 228, 232 (2000) (quotation marks omitted); *see also Cap Care Grp., Inc.*, 149 N.C. App. at 822, 561 S.E.2d at 581 (noting that a partnership can be implied from the parties' conduct).

38.     Plaintiff alleges that he and Perry agreed to develop properties for lease or sale and to split the profits and losses equally.  (Compl. ¶¶ 28, 41.)  Although the Complaint alleges that Perry usually advanced Plaintiff a portion of the expected profits at the outset of property development, the amount was to be deducted from Plaintiff's share of the profits when such profits were ultimately realized.  (Compl. ¶¶ 34, 40.)  Plaintiff, thus, alleges facts in support of an oral partnership agreement between Plaintiff and Perry.

39.     Additionally, the Complaint alleges facts that support either an express or implied-in-fact partnership agreement, as Plaintiff alleges that he and Perry operated as a partnership for approximately seven years, during which time Perry put up the necessary capital to acquire the properties and Plaintiff located numerous properties to be acquired by the partnership, developed the properties, located and contracted with lessees, and addressed issues that arose with the properties.  (Compl. ¶¶ 24, 28.)  The Complaint further alleges that Plaintiff and Perry referred to each other as partners in their dealings with each other and held themselves out as partners to third parties, who understood Plaintiff and Perry to be partners.  (Compl. ¶¶ 43–47.)  Finally, the Complaint alleges that, although various Perry Entities held legal title to the partnership properties, Plaintiff received profits from the sale of one of the properties and sold his interest in another partnership property to Perry. (Compl. ¶¶ 39, 118, 163–65.)

40.     Defendants contend that Plaintiff's partnership-based claims fail because the Complaint fails to allege that Plaintiff had any ownership of or right to control

any of the partnership properties as evidenced by the deeds attached to the Complaint demonstrating that Plaintiff had no ownership interest in any of the alleged partnership properties. (Defs.' Br. Supp. 3–4.) In addition, Defendants assert that, not only were all of the partnership properties held by the Perry Entities, but Plaintiff's allegations that Perry paid funds to Plaintiff once a property was acquired are more consistent with a broker or fee-driven relationship than with a partnership. (Defs.' Br. Supp. 4.)

41. Plaintiff argues that the Perry Entities' ownership of the properties does not negate the existence of a partnership as evidenced by the fact that Plaintiff was paid a percentage of profits from the sale of one of the properties and sold Perry his interest in another property, notwithstanding the fact that the properties were titled to a Perry Entity. (Pl.'s Br. Opp'n 5–6.)

42. Defendants' argument that no partnership existed because Plaintiff had no ownership interest in the properties is unavailing. "[A] familiar type of partnership . . . occurs where the services of the one party is [sic] balanced against the capital furnished by the other; and the statement that the property must be held in common before plaintiff can recover is error." *Potter v. Homestead Pres. Ass'n*, 330 N.C. 569, 578, 412 S.E.2d 1, 6 (1992) (quoting *Eggleston v. Eggleston*, 228 N.C. 668, 677, 47 S.E.2d 243, 249 (1948)).

43. Further, although the alleged arrangement between Plaintiff and Perry might also be consistent with a broker or fee-based arrangement, as opposed to a partnership, at this preliminary stage of the proceedings, the Court is obligated to

accept the Complaint's factual allegations as true and take all reasonable inferences in Plaintiff's favor.

44. Accordingly, the Court concludes, for purposes of the Motion, that the Complaint adequately alleges the existence of an oral partnership agreement between Plaintiff and Perry.

45. Apart from challenging the sufficiency of Plaintiff's factual allegations of a partnership, Defendants argue that Plaintiff's claims for breach of partnership agreement, breach of fiduciary duty, and conversion fail because Plaintiff lacks standing to sue his partner in an action at law until there has been a settlement of partnership affairs. (Defs.' Br. Supp. 4–5 (citing *Pugh v. Newbern*, 193 N.C. 258, 261, 136 S.E. 707, 708–09 (1927)).)

46. In North Carolina, one general partner typically lacks standing to sue another general partner at law "until there has been a complete settlement of the partnership affairs and a balance struck."[3] *Pugh*, 193 N.C. at 260, 136 S.E. at 708. Accordingly, "a general partner typically must pursue damages for injuries caused by his partners through dissolution of the partnership and a winding-up and accounting of each partners' partnership shares to determine damages to his partnership interest." *Gillespie v. Majestic Transp., Inc.*, 2016 NCBC LEXIS 69, at *12 (N.C. Super. Ct. Sept. 9, 2016). However, there are numerous well-established exceptions

---

[3] Although Defendants' argument based on *Pugh* relates to a party's standing, which is generally brought pursuant to Rule 12(b)(1), "[a] motion to dismiss a party's claim for lack of standing is tantamount to a motion to dismiss for failure to state a claim upon which relief can be granted" pursuant to Rule 12(b)(6). *Slaughter v. Swicegood*, 162 N.C. App. 457, 464, 591 S.E.2d 577, 582 (2004).

to the general rule, several of which are applicable to Plaintiff's claims against Perry. *Pugh*, 193 N.C at 261, 136 S.E. at 708–09.

### 1. Breach of Partnership Agreement

47. The Complaint alleges that Perry breached the partnership agreement by failing or refusing to account for or pay Plaintiff his equal share of partnership profits. (Compl. ¶¶ 39–41, 68, 80, 93, 105, 119, 127, 145, 147–48, 160–61, 164.) Our courts recognize an exception to the general rule against partners suing each other in actions at law in the absence of an accounting for "[c]laims upon express personal contracts between the partners." *Pugh*, 193 N.C. at 261, 136 S.E. at 709.

48. Defendants contend the exception does not apply to claims based on the partnership agreement itself, but to a contract between partners that does not involve partnership matters or require an examination of the partners' accounts. (Defs.' Reply Br. 3.) Contrary to Defendants' argument, however, our courts have held that a partnership agreement can be an express personal contract upon which one partner may sue another partner for breach. *Crosby v. Bowers*, 87 N.C. App. 338, 344–45, 361 S.E.2d 97, 101–02 (1987); *see also Gillespie*, 2016 NCBC LEXIS 69, at *2, 13–14 (concluding that Plaintiff had standing to assert a claim for breach of an oral partnership agreement). Moreover, Defendants' interpretation of the exception for personal contract claims would make the exception redundant with another exception enunciated in *Pugh* for claims not connected with the partnership. *See Pugh*, 193 N.C. at 261, 136 S.E. at 708–09.

49. Therefore, the Court concludes that Plaintiff's claim for breach of the partnership agreement is not barred by *Pugh* as the claim is based on allegations of an express oral contract between Plaintiff and Perry.

## 2. Breach of Fiduciary Duty and Constructive Fraud

50. The Complaint alleges that Perry breached fiduciary duties owed to Plaintiff pursuant to the parties' partnership agreement by failing to account for or pay Plaintiff his share of partnership profits and that Perry's breach amounted to constructive fraud. (Compl. ¶¶ 68, 80, 93, 105, 115, 127, 145, 147–48, 186, 191.) The Complaint further alleges that Perry fraudulently withheld from Plaintiff information concerning the partnership. (Compl. ¶¶ 66, 68, 162–64, 205–08.)

51. Partners in a general partnership are each other's fiduciaries as a matter of law. *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 178, 684 S.E.2d 41, 53 (2009) (citing *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991)). "It is elementary that the relationship of partners is fiduciary and imposes on them the obligation of the utmost good faith in their dealings with one another in respect to partnership affairs." *Marketplace Antique Mall, Inc. v. Lewis*, 163 N.C. App. 596, 600, 594 S.E.2d 121, 124 (2004). Where a partnership exists, the partners are confidential agents as to each other "and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs." *Casey v. Grantham*, 239 N.C. 121, 124–25, 79 S.E.2d 735, 738 (1954). The North Carolina Uniform Partnership Act (the "NCUPA") codified this principle by requiring partners to "render on demand true and full information of all

things affecting the partnership to any partner[.]" N.C. Gen. Stat. § 59-50; *Compton v. Kirby*, 157 N.C. App. 1, 15, 577 S.E.2d 905, 914 (2003). The NCUPA further provides that

> [e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

N.C. Gen. Stat. § 59-51(a).

52. Plaintiff alleges that Perry failed to disclose to Plaintiff transactions involving partnership property and refused to give Plaintiff an accounting when demanded. The Complaint further alleges that Perry or the Perry Entities have improperly retained partnership profits generated by the properties. (Compl. ¶¶ 104, 115, 127, 145, 147–48.) As a result, the Court concludes that, at the pleadings stage, Plaintiff has adequately alleged the existence of a fiduciary duty owed by Perry to Plaintiff and the breach thereof resulting in constructive fraud.

53. An exception to the general rule prohibiting one partner from suing another partner at law in the absence of an accounting and winding up exists where "one partner has been guilty of fraud in . . . concealing [partnership] property or by other device defeating the rights of the complaining party." *Pugh*, 193 N.C. at 261, 136 S.E. at 708–09. Accordingly, since Plaintiff alleges that Perry was guilty of fraudulent conduct in his dealings with Plaintiff, the Court further concludes that Plaintiff has standing to assert his claims against Perry for breach of fiduciary duty and constructive fraud. *See Gillespie*, 2016 NCBC LEXIS 69, at *14–15.

### 3. Conversion

54. The Complaint alleges that Plaintiff had a legal right to the profits generated by the partnership and that Perry improperly retained or conveyed Plaintiff's share of the profits to the Perry Entities. (Compl. ¶¶ 222–23.) A claim for conversion of partnership property is another exception to the general rule that one partner may not maintain an action at law against another partner. *Pugh*, 193 N.C. at 261, 136 S.E. at 708–09; *Lewis v. Boling*, 42 N.C. App. 597, 606, 257 S.E.2d 486, 492 (1979).

55. Defendants contend that, under *Pugh*, Plaintiff may not maintain an action against Perry for conversion of partnership *profits* because any claim for profits can only be determined by an accounting.[4] (Defs.' Br. Supp. 8.) However, Defendants' argument is not supported by any legal authority, and, in fact, this Court has permitted a conversion claim brought by one general partner against another to proceed on a Rule 12(b)(6) motion where the complaint alleged that defendant converted "funds rightfully belonging to the partnership business." *Gillespie*, 2016 NCBC LEXIS 69, at *16–17. The Court, therefore, rejects this argument.

56. Defendants further argue that Plaintiff's claim for conversion of partnership profits fails because the Complaint alleges that Perry converted

---

[4] Defendants also argue that Plaintiff's conversion claim fails to the extent that it is based on any alleged conversion of real property because real property cannot be converted and, in any event, the claims would be barred by the applicable three-year statute of limitations. (Defs.' Br. Supp. 8.) Because Plaintiff clarified in his brief in opposition to the Motion to Dismiss that the conversion claim is based on the alleged conversion of partnership profits, not real property, the Court need not address these arguments. (Pl.'s Br. Opp'n 12.)

Plaintiff's personal property, but there is no allegation that Perry converted any property co-owned by the partnership. (Defs.' Reply Br. 4.) Not only do Defendants fail to cite any precedent in support of this argument, but Defendants' argument ignores that the Complaint alleges that Perry sold a partnership franchise for over $1.5 million without telling Plaintiff and kept the profits. (Compl. ¶ 66.) Taking the allegations of the Complaint as true, such profits would be property belonging to the partnership that were wrongfully converted by Perry.

57. Based on the foregoing, the Court concludes that Plaintiff has standing to assert a claim for conversion against Perry. Accordingly, the Motion to Dismiss Plaintiff's conversion claim is denied.

## B. Plaintiff's Alternative Claims

58. Defendants argue that Plaintiff's claims for fraud, negligent misrepresentation, negligence, UDTP, and unjust enrichment are defeated by Plaintiff's allegations that a partnership exists and, therefore, must be dismissed. (Defs.' Br. Supp. 6–9; Defs.' Reply Br. 4.) Defendants contend that "Plaintiff's inconsistent factual allegations [as to the existence of a partnership] are problematic" in that permitting the partnership and non-partnership claims to proceed together would put Plaintiff "in the impossible position of proving to the jury the existence and the non-existence of a partnership." (Defs.' Reply Br. 4.)

59. As an initial matter, the Court notes that, although Plaintiff would not be able to simultaneously recover for claims that require the existence of a partnership and claims that would be precluded by the existence of a partnership, Rule 8(e)(2)

expressly provides that a party is permitted to "state [in a complaint] as many separate claims . . . as he has *regardless of consistency*[.]"  N.C. Gen. Stat. § 1A-1, Rule 8(e)(2) (emphasis added).  As noted above, our rules further permit a pleading to demand "relief in the alternative or of several different types," N.C. Gen. Stat. § 1A-1, Rule 8(a)(2), and allows a party to "set forth two or more statements of a claim . . . alternatively or hypothetically, either in one count . . . or in separate counts[,]" N.C. Gen. Stat. § 1A-1, Rule 8(e)(2).

### 1. Fraud

60.     Defendants argue that Plaintiff's fraud claim fails because all of Perry's false representations or concealments are conditioned upon the basic allegation that Perry fraudulently represented the existence of a partnership.  (Defs.' Br. Supp. 6–7.)  Defendants, therefore, argue that Plaintiff's fraud claim is defeated by the fact that the claim incorporates by reference all preceding paragraphs, including allegations that a partnership existed—i.e., if there is a partnership, there can be no *false* representation concerning the existence of a partnership.  (Defs.' Br. Supp. 7.)

61.     First, and most significantly, as noted above, Defendants' argument ignores that our rules of civil procedure expressly allow a party to set forth in his pleading alternative and inconsistent claims.  N.C. Gen. Stat. § 1A-1, Rule 8(e)(2).  Additionally, our Court of Appeals, in an unpublished opinion, recently confronted an argument that counts of a complaint must be addressed separately and each count may only be evaluated based on what was incorporated by reference or what was individually alleged in that claim.  *Perez v. Perez*, No. COA17-512, 2018 N.C. App.

LEXIS 211, at *5–6 (Mar. 6, 2018) (unpublished). In rejecting the argument, the Court of Appeals concluded that a court is permitted to view the complaint as a whole and further noted that the practice of separating each claim is nowhere required by law and "may simply be a practice that developed for clarity and ease of reading." *Id.* at *6. Although *Perez* involved an issue different from the precise issue presented by Defendants' argument, the Court nevertheless concludes that it is within its authority to view the Complaint as a whole and is not required to look only at what is pleaded or incorporated by reference in each individual claim.

62. Furthermore, not all of Plaintiff's fraud allegations would be defeated by the existence of a partnership. For example, the Complaint alleges that Perry concealed from Plaintiff profits that were generated by partnership properties. (Compl. ¶¶ 66, 114–15, 197, 199–200.) A fraud claim based on misrepresentations or omissions made by one general partner to another can proceed where a partnership is alleged and proven. *See Pugh*, 193 N.C. at 261, 136 S.E. at 708–09 ("A partner may maintain an action at law against his copartner . . . [w]hen one partner has been guilty of fraud . . . by concealing [partnership] property or by other device defeating the rights of the complaining party."); *see also Gillespie*, 2016 NCBC LEXIS 69, at *15–16 (denying a motion to dismiss a fraud claim where one partner misrepresented that partnership funds were being properly contributed to the partnership when they were being diverted to defendant-partner's other business).

63. Accordingly, the Court concludes that Plaintiff's fraud claim is not defeated by Plaintiff's allegations that a partnership existed.

## 2.     Negligence and Negligent Misrepresentation

64.     Although Defendants' Motion to Dismiss asks that Plaintiff's negligence and negligent misrepresentation claims be dismissed, (*see* Mot. Dismiss ¶ 3), Defendants do not separately argue a basis for dismissal of Plaintiff's negligence claim.  Plaintiff's negligence claim is based on allegations that Perry negligently handled negotiations surrounding two properties resulting in losses to the partnership.  (Compl. ¶ 219.)  Accordingly, the Motion to Dismiss is denied as to Plaintiff's negligence claim.

65.     As to Plaintiff's negligent misrepresentation claim, Defendants raise the same argument that they made as to Plaintiff's fraud claim: that Plaintiff's claim fails because the Complaint incorporates by reference into the negligent misrepresentation claim allegations that a partnership existed.  (Defs.' Br. Supp. 7.)  Defendants argue that the claim fails because Perry could not have negligently misrepresented the existence of a partnership where a partnership, in fact, exists.  (Defs.' Br. Supp. 7.)  The Court rejects this argument for the reasons stated above.

66.     Defendants next argue that Plaintiff's negligent misrepresentation claim is barred by the economic loss rule because Plaintiff has alleged the existence of a partnership contract.  (Defs.' Br. Opp'n 7.)  Defendants are correct that the existence of a valid contract may preclude a negligence-based claim for conduct that amounts to a breach of the parties' contract.  *Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 257 (N.C. Ct. App. 2016) ("[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to

perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.") However, Defendants' argument again ignores that Plaintiff is permitted to plead a negligent misrepresentation claim in the alternative to his breach of partnership agreement claim, although he may not recover on both theories. Simply put, if a jury were to find that a partnership did not exist, Plaintiff might well be permitted to recover if he satisfies the jury that Perry represented to Plaintiff they had a partnership when in fact they did not.

67. Having rejected Defendants' arguments for dismissal of Plaintiff's negligent misrepresentation claim, the Court concludes that the Motion to Dismiss should be denied as to that claim.

### 3.    UDTP

68. The Complaint alleges that Perry falsely represented to Plaintiff that the two would act as a partnership, thus inducing Plaintiff to provide valuable business services to Perry by performing the work necessary to locate, develop, and lease properties. (Compl. ¶¶ 226–27.) The Complaint also alleges that Perry withheld information about the profitability or sale of the properties, made false representations to Plaintiff that he would not sell the properties, and improperly placed partnership property in the Perry Entities. (Compl. ¶¶ 228, 230–32, 234–38.) Plaintiff alleges that these acts constitute violations of N.C. Gen Stat. § 75-1.1 ("UDTP claim"). (*See* Compl. 18–19.)

69.     Defendants contend that Plaintiff's UDTP claim fails because, as alleged by Plaintiff, any unfair or deceptive conduct occurred within a partnership, i.e., a single market participant, and was not "in or affecting" commerce as required by the UDTP Act (the "UDTPA" or "Act"). (Defs.' Br. Supp. 8–9.) Plaintiff concedes that, if the existence of a partnership is proven, then Plaintiff's UDTP claim will fail. (Pl.'s Br. Opp'n 13.) However, Plaintiff argues that the Complaint alleges the UDTP claim as an alternative claim that would survive should Plaintiff fail to establish the existence of a partnership. (Pl.'s Br. Opp'n 13.)

70.     "To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *Carcano*, 200 N.C. App. at 171, 684 S.E.2d at 49. Although the UDTPA broadly defines "commerce" as "all business activities, however denominated," N.C. Gen. Stat. § 75-1.1(b), "the history of the Act indicates that the General Assembly was targeting unfair and deceptive interactions between market participants[,]" *Bickley v. Fordin*, 811 S.E.2d 671, 674 (N.C. Ct. App. 2018) (emphasis and quotation marks omitted). "As a result, any unfair or deceptive conduct contained solely within a single business is not covered by the Act." *White v. Thompson*, 364 N.C. 47, 53, 691 S.E.2d 676, 680 (2010).

71.     The Court agrees with Defendants that, on the facts alleged, Plaintiff may not pursue a claim under section 75-1.1. *See id.* at 53–54, 691 S.E.2d at 680 (concluding that defendant-partner's breach of fiduciary duty was not "in or affecting commerce" where any unfairness did not occur in defendant's dealings with third

parties); *Carcano*, 200 N.C. App. at 175, 684 S.E.2d at 52 (concluding that conduct that occurred within plaintiff and defendant's business arrangement, which would likely be governed as a partnership, was not "in or affecting commerce" where it "had no impact on consumers or the marketplace").

72.     In *Carcano*, defendants and plaintiffs intended to form a real estate venture pursuant to which defendants would provide properties and plaintiffs would provide capital, with ownership in the venture and profits to be shared. *Carcano*, 200 N.C. App. at 164, 684 S.E.2d at 45. Although the parties intended to execute a written contract to govern their business relationship and form a limited liability company to hold the properties, neither occurred. *Id*. After the parties realized no company had been formed, plaintiffs filed a complaint that included a UDTP claim against defendants for inducing plaintiffs to invest in a nonexistent entity through misleading and fraudulent representations. *Id*. at 165, 684 S.E.2d at 45–46. The Court of Appeals affirmed a grant of summary judgment in defendants' favor because plaintiffs failed to show that defendants' actions had any effect on commerce. *Id*. at 175–76, 684 S.E.2d at 52. The *Carcano* court reasoned that the "business dealings were solely between plaintiffs and defendants in their limited business relationship" and "any 'marketing' of membership in order to raise capital" occurred directly between plaintiffs and defendants (or through an intermediary) and "had no impact on consumers or the marketplace." *Id*. at 175, 684 S.E.2d at 52.

73. Like the plaintiffs in *Carcano*, there is no indication from the Complaint that any alleged unfair or deceptive conduct had any impact on the market beyond Plaintiff and Perry's limited business dealings.

74. Accordingly, the Court concludes that Plaintiff has failed to state a claim for UDTP because, under either alternative theory presented by the Complaint, Perry's alleged conduct was not in or affecting commerce. As a result, the Motion to Dismiss should be granted as to Plaintiff's UDTP claim.

### 4. Unjust Enrichment

75. Defendants contend that Plaintiff's unjust enrichment claim fails because (1) Plaintiff has alleged the existence of an express agreement and an unjust enrichment claim will not lie where there is a contract between the parties, and (2) a partner is not entitled to compensation for his services, thus, Plaintiff's claim for compensation for services belies the existence of a partnership. (Defs.' Br. Supp. 9.)

76. To state a claim for unjust enrichment, Plaintiff must allege "that [he] conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002); *see also Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). An unjust enrichment claim is based "neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe*, 322 N.C. at 570, 369 S.E.2d at 556. "If there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Id.*

77. While Defendants are correct that Plaintiff will not be able to recover on both his claims for breach of partnership agreement and unjust enrichment, Defendants again ignore that our procedure expressly permits Plaintiff to plead alternative and conflicting theories of relief. N.C. Gen. Stat. § 1A-1, Rule 8(e)(2). Further, Defendants' second argument as to the unjust enrichment claim is, in reality, an argument that Plaintiff has not adequately alleged the existence of a partnership if he is claiming an entitlement to compensation for his services. This, too, ignores that Plaintiff asserts the unjust enrichment claim as an alternative claim should Plaintiff fail in proving that a partnership existed.

78. The Complaint alleges that Plaintiff rendered valuable services to Perry, which services Perry requested and voluntarily accepted, in the form of finding properties and tenants, negotiating contracts with tenants and for other services, developing properties, and resolving problems with the properties once leased. (Compl. ¶¶ 243–45, 249.) Plaintiff alleges that when he rendered services he reasonably expected remuneration but has received no compensation. (Compl. ¶¶ 243–44, 246–47.)

79. Accordingly, the Court concludes, at this stage of the proceedings, that Plaintiff has adequately alleged a claim for unjust enrichment.

C. **Constructive Trust**

80. The Complaint requests that the Court impose a constructive trust on the Perry Entities based on allegations that Perry or the Perry Entities have benefited from Plaintiff's expertise, contacts, services, and expenditures used to find, develop,

and maintain suitable properties because the Perry Entities hold title to the partnership properties and are retaining partnership profits generated by those properties. (Compl. ¶¶ 66–68, 78–80, 82, 88–93, 95, 97, 101–05, 107, 109–10, 112–15, 120–24, 127–28, 129–33, 145–52, 243–45, 250, Exs. A–L.)

81. Defendants contend that Plaintiff is not entitled to the remedy of a constructive trust because: (1) there is no allegation that the Perry Entities owed Plaintiff a fiduciary duty; (2) there is no allegation that the Perry Entities were unjustly enriched; and (3) the Perry Entities did not acquire the property through fraud, breach of duty, or any other circumstance making it inequitable for them to retain the property. (Defs.' Br. Supp. 6.)

82. Defendants' brief begins its section entitled "constructive trust" by stating, "In North Carolina, to assert a claim for a constructive trust, a plaintiff must allege a relationship of trust and confidence, that the defendant took advantage of that trust to benefit himself, and as a result, the plaintiff was injured." (Defs.' Br. Supp. 6 (citing *Clay v. Monroe*, 189 N.C. App. 482, 488, 658 S.E.2d 532, 536 (2008)).) Although not entirely clear from the brief, the Court understands this argument to assume that a constructive trust may only be imposed where there is a finding of constructive fraud. However, the elements recited by Defendants in their brief are the elements of a claim for constructive fraud, not the requirements for imposition of a constructive trust. *Clay*, 189 N.C. App. at 488, 658 S.E.2d at 536–37. In contrast,

> [a] constructive trust is an equitable remedy imposed by courts . . . to prevent the unjust enrichment of the holder of title to, or of an interest in, property which [was] acquired through fraud, breach of duty or some

other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Seraph Garrison, LLC ex rel. Garrison Enters., Inc. v. Garrison*, 787 S.E.2d 398, 410 (N.C. Ct. App. 2016) (second alteration in original) (quotation marks omitted).

83. "[A] fiduciary relationship, while generally the basis for constructive trust claims, is not strictly required." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530, 723 S.E.2d 744, 751 (2012). However, "[i]n the absence of such a relationship, [Plaintiff] faces the difficult task of proving 'some other circumstance making it inequitable' for [Defendants] to possess [Plaintiff's] funds . . . ." *Id.* at 530–31, 723 S.E.2d at 752. Our Supreme Court "ha[s] also used the phrase, 'any other unconscientious manner,' in describing situations in which a constructive trust may be imposed without a fiduciary relationship." *Id.* at 531, 723 S.E.2d at 752.

84. Further, and contrary to Defendants' argument, the Complaint alleges that "Perry *or his entities* have been unjustly enriched." (Compl. ¶ 250 (emphasis added).) Additionally, the Complaint alleges, and its attachments demonstrate, that the Perry Entities hold title to all of the properties that allegedly belong to the partnership and for which Plaintiff performed services with an expectation that he would receive a portion of the profits. (Compl. ¶¶ 67, 82, 95, 107, 110, 128, 130, 166, Exs. A, C–G, I–J, L.) The Complaint also alleges that the Perry Entities are in wrongful receipt of partnership rents or profits. (Compl. ¶¶ 66, 104, 112, 114–15, 147–48.) When taken together, the allegations of the Complaint, which are taken as true for purposes of

the Motion to Dismiss, state the elements of a claim for imposition of a constructive trust against the Perry Entities.

85. Plaintiff alleges that Perry is a manager and the registered agent of each of the Perry Entities alleged to be in wrongful receipt of partnership profits. (Compl. ¶¶ 9–10, 12–13, 16–17, 20, 22–23.) The Complaint also alleges that Perry, through Perry Brothers, sold one of the partnership properties without informing Plaintiff or giving him his share of the profits. (Compl. ¶ 66.) Plaintiff further alleges that Perry or one of the Perry Entities has been collecting rents from another partnership property without giving Plaintiff his share. (Compl. ¶¶ 104–05.) Finally, the Complaint alleges that Down East received rents from partnership properties and the price paid by a lessee of a partnership property to buy out its lease but did not pay Plaintiff his share. (Compl. ¶¶ 112–15, 147–48.)

86. Taking the allegations that Perry was a manager, if not the sole manager, and was the registered agent for each of the Perry Entities as true, the Court concludes, at this early stage of the proceedings, that such facts are sufficient for Plaintiff to allege that the Perry Entities obtained partnership properties or profits with constructive knowledge that such properties and profits were partnership property in which Plaintiff had an interest.

87. Although "[Plaintiff] faces the difficult task of proving 'some other circumstance making it inequitable' for [Defendant] to possess [partnership properties or profits,]" *Variety Wholesalers, Inc.*, 365 N.C. at 530–31, 723 S.E.2d at

752, the Court concludes that Plaintiff has alleged sufficient facts to allow its request for constructive trust to survive Defendants' Motion to Dismiss.

### D. Claims Against Perry's, Inc.

88. A review of the Complaint reveals that the only allegations as to Perry's, Inc. are: Perry's, Inc. is a North Carolina corporation that shares an address for its principal office with the Perry Entities, (Compl. ¶ 18); Dan Perry is the president and Perry is the secretary and registered agent of Perry's, Inc., (Compl. ¶¶ 19–20, 22); Perry's, Inc. has 100,000 authorized shares of common stock, (Compl. ¶ 21); and Plaintiff "provided the necessary expertise, contacts, services, and expenses to Perry's Inc.," (Compl. ¶ 30). Further, none of the individual causes of action asserted in the Complaint reference Perry's, Inc. or seek a judgment against Perry's, Inc. (Compl. 13–20.)

89. Because the Complaint neither asserts any claims against Perry's, Inc. nor provides any factual basis to do so, the Court concludes that the Motion to Dismiss should be granted as to Perry's Inc.

## VI. CONCLUSION

90. **THEREFORE**, for the foregoing reasons, the Court **DENIES** the Motion to Strike and **DENIES in part** and **GRANTS in part** the Motion to Dismiss as follows.

> A. The Motion to Dismiss is **DENIED** as to Plaintiff's request for the imposition of a constructive trust and Plaintiff's claims for breach of partnership agreement, breach of fiduciary duty, constructive fraud,

fraud, negligent misrepresentation, negligence, conversion, and unjust enrichment.

B. The Motion to Dismiss is **GRANTED** as to Plaintiff's UDTP claim because the Complaint fails to adequately allege that Defendants' conduct was in or affecting commerce.

C. The Motion to Dismiss is **GRANTED** as to Defendant Perry's, Inc., and Perry's, Inc. is dismissed from this action.

**SO ORDERED**, this the 30th day of July, 2018.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases